**TRADING POST MANAGEMENT COMPANY, LLC; Trading Post Homes of Louisville, LLC; Mortgage Lending Solutions, LLC; Richter Insurance, LLC; Trading Post Homes of Shepherdsville, LLC; Trading Post Homes of Elizabethtown, LLC; Trading Post Homes of Cave City, LLC; and Trading Post Homes of Meade County, LLC, Appellants,**

v.

**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION; and Kentucky Division of Unemployment Insurance, Appellees.**

No. 2010–CA–000453–MR.

Court of Appeals of Kentucky.

Nov. 4, 2011.

concurrent with the temporary suspension in *Orr*, 336 S.W.3d 458).

David R. Deatrick, Jr., Louisville, KY, for appellants.

James C. Maxson, Frankfort, KY, for appellee.

Before TAYLOR, Chief Judge; ACREE and COMBS, Judges.

## OPINION

ACREE, Judge:

The questions presented by the appellants include whether the Kentucky Unemployment Insurance Commission erroneously determined that eight employing bodies are successors-in-interest to the tax account and tax rate of Trading Post Mobile Homes, Inc., and whether the apportionment of liability among the eight successors was proper pursuant to Kentucky Revised Statute (KRS) 341.540(5)(a). We conclude the Commission's findings of fact were inadequate and reverse the Franklin Circuit Court's opinion affirming, vacate the Commission's order, and remand the matter for entry of findings consistent with the requirements of 787 Kentucky Administrative Regulation (KAR) 1:300.

### Facts and procedure

Trading Post Mobile Homes, Inc., was a wholly owned subsidiary of Champion Enterprises, Inc., a manufacturer of mobile

homes. Trading Post Mobile Homes, Inc., was the retail arm of Champion's business, and at one time Champion operated thirty-seven retail outlets in three states through the subsidiary. In 2000, Champion began liquidating its retail business and over the years reduced its retail operations until nothing remained of Trading Post Mobile Homes, Inc., but five retail stores in Kentucky and two in Indiana.

Brothers Stephen and Christopher Richter began talks with Champion officers in 2004 to purchase some of the remaining retail outlets. The Richters ultimately agreed to purchase the five Kentucky stores.[1] Upon acquiring those businesses, the brothers established a separate limited liability company for each location. The new LLCs representing the retail operations were named as follows: Trading Post Homes of Louisville, LLC; Trading Post Homes of Shepherdsville, LLC; Trading Post Homes of Elizabethtown, LLC; Trading Post Homes of Cave City, LLC; and Trading Post Homes of Meade County, LLC.

The Richter brothers wished to pursue a different business plan than Champion had employed when it operated Trading Post Mobile Homes, Inc. To that end, they diversified the products they sold in their retail businesses. Rather than focusing almost exclusively on selling new Champion mobile homes, the brothers offered a greater variety of mobile homes produced by different manufacturers and increased the number of used mobile homes available for sale. The Richters also desired to expand their business operations beyond solely the retail sale of mobile homes; rather, they saw business potential in financing mobile home purchases, providing insurance, and developing real estate. To that end, they created three new business entities: Mortgage Lending Solutions, LLC; Richter Insurance, LLC; and Trading Post Management Company, LLC.

The Richters notified the Division of Unemployment Insurance of their ownership of the eight newly-formed LLCs by completing and filing Division Form UI–21, entitled Report of Change in Ownership or Discontinuance of Business in Whole or Part. They completed a different form for each new business entity, including the three LLCs responsible for the mortgage, insurance, and management businesses. The Richter brothers represented on each form that each of the eight LLCs had assumed a portion of Trading Post Mobile Homes, Inc.'s, payroll.

On the basis of the information provided in the UI–21 forms, the Division notified the Richters that their eight businesses were successors-in-interest to the unemployment reserve account of Trading Post Mobile Homes, Inc. This meant the eight LLCs owned by the Richters would be liable for the outstanding amount of unemployment taxes Trading Post Mobile Homes, Inc., had owed, $526,573.84, and would inherit the tax rate the predecessor had incurred as a result of the deficit, 9.5%, in accordance with KRS 341.540.[2]

The Richters protested on behalf of their business entities. They claimed their eight LLCs should not be deemed succes-

1. The Richters have described their purchase of the retail outlets in Louisville, Shepherdsville, and Meade County as "asset purchases," and their acquisition of the stores in Cave City and Elizabethtown as "consignment purchases."

2. There was some confusion in the Division about the tax rate the LLCs had inherited. Ultimately, Division employees concluded the rate was 9.5% beginning in 2005. The appellants have not contested calculation of the tax rate on appeal. The initial tax rate for a new business is usually 2.7%. KRS 341.270.

sors-in-interest to Trading Post Mobile Homes, Inc.'s, account or tax rate.

Following an evidentiary hearing, the Commission determined the eight Richter businesses were successors-in-interest to the account. Accordingly, the Commission ordered each of the eight Richter LLCs to pay a portion of the total $526,573.84 owed by Trading Post Mobile Homes, Inc., and assigned them the 9.5% tax rate.

The Richters appealed the decision to the Franklin Circuit Court on behalf of their eight LLCs. The circuit court affirmed, finding the Commission's order was based upon substantial evidence and proper application of the law. This appeal followed. The Richters now contend both the Commission and the circuit court ruled in error.

### Standards of review

■ Ordinarily, an administrative agency's findings of fact will not be disturbed on appeal unless they are clearly erroneous. *Kentucky Unemployment Insurance Commission v. Landmark Community Newspapers of Kentucky, Inc.,* 91 S.W.3d 575, 579 (Ky.2002). "[C]learly erroneous means not supported by substantial evidence. 'Substantial evidence' is evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable persons." *Hughes v. Kentucky Horse Racing Authority,* 179 S.W.3d 865, 871 (Ky.App.2004) (citations omitted).

■ It is also typical that questions of law will be addressed *de novo,* with no deference to the circuit court or administrative agency. *See Workforce Development Cabinet v. Gaines,* 276 S.W.3d 789, 792 (Ky.2008).

[W]e note that an administrative agency's interpretation of its own regulations is entitled to substantial deference. A reviewing court is not free to substitute its judgment as to the proper interpretation of the agency's regulations as long as that interpretation is compatible and consistent with the statute under which it was promulgated and is not otherwise defective as arbitrary or capricious.

*Commonwealth, Cabinet for Health Services v. Family Home Health Care, Inc.,* 98 S.W.3d 524, 527 (Ky.App.2003) (citations omitted).

Where, however, a party fails to substantially comply with the requirements of CR 76.12, we have three options: we can strike the brief, proceed under the usual standards of review, or review the arguments for manifest injustice only. CR 76.12(8)(a); *see also Elwell v. Stone,* 799 S.W.2d 46, 48 (Ky.App.1990). Manifest injustice is "[a] direct, obvious, and observable error[.]" BLACK'S LAW DICTIONARY (9th ed.2009).

The appellants have failed to substantially comply with the mandates of CR 76.12. While the appellants' "STATEMENT OF THE CASE" provides "ample references to the specific pages of the record" directing our attention to "the facts and procedural events necessary to an understanding of the issues presented by the appeal," CR 76.12(4)(c)(iv), the brief is lacking in other significant ways. CR 76.12(c)(v) requires that each brief contain

An "ARGUMENT" conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

CR 76.12(4)(c)(v). Appellants' brief does not make any statement regarding preservation and it does not provide citation to the agency record.

Because of this shortcoming, we cannot ascertain from their brief if the eight Richter LLCs preserved these arguments at all, or in what form they were presented to the Commission or the circuit court for consideration. That makes it difficult for us to review the factual findings of the Commission for clear error and the legal conclusions *de novo.* For that reason, we choose to entertain the appellants' arguments, but to reverse only upon a finding of manifest injustice.

### The Commission's order is founded on inadequate findings of fact

■ The Division concluded that the eight LLCs were successors-in-interest to Trading Post Mobile Homes, Inc.'s, reserve tax account based upon provisions of KRS 341.540 stating:

> (2) For the purpose of this chapter,[3] if a subject employer [4] transfers all or part of its trade or business to another employing unit, the acquiring employing unit shall be deemed a successor if the transfer is in accordance with administrative regulations promulgated by the secretary, or if the transferring and acquiring employing units have substantially the same ownership, management, or control. If an employing unit is deemed a successor, the transferring employing unit shall be deemed a predecessor.

> (3) Any successor to the trade or business of a subject employer shall assume the resources and liabilities of the predecessor's reserve account, including interest, and shall continue the payment of all contributions and interest due under this chapter, except that the successor shall not be required to assume the lia-

bility of any delinquent contributions and interest of a predecessor or predecessors unless the cabinet notifies the successor of the delinquency within six (6) months after the department has notice of the succession.

KRS 341.540(2)–(3).

In turn, the relevant portion of the regulations promulgated by the secretary provides:

> successorship shall be deemed to have occurred between two (2) employing units if:

> (1) Negotiation occurs to bring about the transfer, either directly between the parties to the transfer, or indirectly through a third party intermediary; and

> (2) At least two (2) of the conditions established in the subsection are met, except this requirement shall not be satisfied if only paragraphs (c) and (d) of this subsection are met:

>> (a) The employing unit was a going concern at the time negotiations for the transfer began;

>> (b) The subsequent owner or operator continued or resumed basically the same type of employing unit in the same location;

>> (c) The subsequent owner employed fifty (50) percent or more of the previous owner's workers in covered employment;

>> (d) The previous owner employed fifty (50) percent or more of the subsequent owner's workers in covered employment; or

---

3. "This chapter" refers to KRS Chapter 341, which governs unemployment compensation.

4. "Subject employer" means an employer who is subject to the unemployment insur-ance laws and regulations of Kentucky as defined in KRS 341.070. There has been no question that Trading Post Mobile Homes, Inc., was a subject employer.

(e) The subsequent owner acquired work contracts or commitments from the previous owner.

787 KAR 1:300, Section 2.

Following an evidentiary hearing, the Commission concluded that all eight LLCs owned by the Richters were successors-in-interest to Trading Post Mobile Homes, Inc.'s tax account. In so doing, the Commission found the requirements of 787 KAR 1:300, Section 2, had been met because: (1) negotiations between the Richters and an officer of Champion had occurred to bring about transfer of the business; (2) the predecessor was a going concern at the time of the transfer to the Richter brothers; and (3) the eight new LLCs were operating essentially the same type of business as Trading Post Mobile Homes, Inc., had operated in the same location.

Notable in the Commission's decision is the lack of analysis with respect to each Richter-owned LLC. Rather than assessing the relationship between Trading Post Mobile Homes, Inc., and each of the purported successors individually, the Commission treated all eight LLCs as if they constituted a single business.

We cannot properly review the factual determinations of the Commission because those findings are incomplete. The language of 787 KAR 1:300, Section 2, makes it clear the Commission is required to analyze the relationship of each alleged successor business with that of the alleged predecessor: "successorship shall be deemed to have occurred *between two (2) employing units* ...." 787 KAR 1:300, Section 2 (Emphasis added). The statute does not provide that successorship may arise among *more than* two employing units; finding successorship among nine employing units was, therefore, not permitted. *See Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky.2010), *rehearing denied* (Aug. 26, 2010) ("It is a familiar and general rule of statutory construction that the mention of one thing implies the exclusion of another ....") (citation and quotation marks excluded). The proper analysis under this regulation requires a separate inquiry and analysis for each so-called successor.

Failure to perform separate analyses constituted manifest injustice because it was in clear contravention of the mandates of 787 KAR 1:300, Section 2. The Division failed to make the findings of fact required by the regulation, and its order is, therefore, not susceptible to our review. The proper course of action in these circumstances is to remand the case to the Commission for additional proceedings including, if necessary, a supplemental hearing to allow the parties to present evidence specific to each employing unit.

Our decision makes consideration of the appellants' other arguments unnecessary.

*Conclusion*

Because the Commission's order was incomplete, we reverse and remand the opinion of the circuit court affirming that order. Upon remand, the circuit court is instructed to remand this matter to the Commission for entry of findings and an order consistent with 787 KAR 1:300, Section 2.

ALL CONCUR.