RENDERED: DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1390-MR

DONNA LEE EFERSTEIN; DIANE DOTSON;
CARTER DUER; KRISTA HARMON;
JERRY L. LOGAN; HELEN LOGAN;
ANDREW ROBERTS; AND
JAMES SAUTTER                          APPELLANTS/CROSS-APPELLEES

                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NOS. 18-CI-00735 & 20-CI-00041

KENTUCKY HORSE
RACING COMMISSION                      APPELLEE/CROSS-APPELLANT

NO. 2020-CA-1391-MR

KENTUCKY HORSE
RACING COMMISSION                      CROSS-APPELLANT/APPELLEE

                    CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NOS. 18-CI-00735 & 20-CI-00041

DONNA LEE EFERSTEIN;
DIANE DOTSON; KRISTA
HARMON; JERRY L.
LOGAN; HELEN LOGAN;
ANDREW ROBERTS; AND
JAMES SAUTTER                                    CROSS-APPELLEES/APPELLANTS


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL, JUDGES.

CLAYTON, CHIEF JUDGE:  Appellants are the owners of ten standardbred stallions who sired twenty foals between 2010 and 2013.  Appellants requested that the Kentucky Horse Racing Commission (the "Commission") pay them certain stallion-owners' incentive awards arising out of the twenty foals placement in first, second, or third place in the Kentucky Sire Stakes races held from 2014 to 2017.

The Commission determined that Appellants did not qualify for such incentive awards and denied Appellants' request.  Upon review, the Franklin Circuit affirmed the Commission's decision, and Appellants appealed the circuit court's order to this Court.

Based upon our review of the record and applicable law, we affirm.

## REGULATORY BACKGROUND

The Kentucky General Assembly has provided for the allocation of specific funds "to promote races, and to provide purses for races, for Kentucky-bred standardbred horses." Kentucky Revised Statutes (KRS) 230.770(2). Such incentives have included the Kentucky Standardbred Development Fund (the "Development Fund") and, more recently, the Kentucky Standardbred Breeders' Incentive Fund (the "Incentive Fund"). *See* KRS 230.770 and KRS 230.802.

The General Assembly created both the Development Fund and the Incentive Fund as part of the Kentucky Sire Stakes, a "series of races held annually in Kentucky for two (2) and three (3) year-old Kentucky bred fillies and colts . . . and funded in whole or in part by the Kentucky Standardbred Development Fund or the Kentucky Standardbred Breeders['] Incentive Fund." 811 Kentucky Administrative Regulations (KAR) 1:215 Section 1(4) (2014).

Moreover, the General Assembly directed the Commission, as the administrative body responsible for the regulation and governance of horse racing in Kentucky, to determine how to distribute the Development Fund and the Incentive Fund. *See* KRS 230.215(2); KRS 230.770(3); KRS 230.802(2)(b). The Commission did so by promulgating 811 KAR 1:215 (the "Regulation"). The Regulation first took effect in March of 1985 and has subsequently been amended several times.

From 2008 to late 2013, the Commission distributed incentive funds in the Kentucky Sire Stakes under a version of the Regulation dated 2009 that mentioned only the Development Fund by name (the "2009 Regulation"). Under the 2009 Regulation, a foal's eligibility for the Kentucky Sire Stakes was tied *solely* to its sire – or father – which had to "stand[] within Kentucky at the time of conception" of the foal. *See* 811 KAR 1:215 Section 1(2) and Section 6 (2009). Additionally, under the 2009 Regulation, the Commission only paid awards to the owners of winning offspring in the form of purses. *Id.* at Sections 11 through 33. The owners of stallions who had sired such winning offspring received no direct awards unless they also owned the winning offspring. *Id.*

For a stallion's offspring to be eligible for Kentucky Sire Stakes funds under the 2009 Regulation, an owner was required to register both the stallion and the stallion's offspring with the Commission. *Id.* at Sections 2 and 29. An owner properly registered their stallion with the Commission by (1) paying both an initial registration and an annual renewal fee, (2) filing a "Standardbred Stallion Certificate, KHRA 300-2 (8/06)," and (3) annually filing a "Standardbred Stallion Certification of Eligibility Renewal Form, KHRA 300-4 (12/06)" (collectively, the "2009 Forms"). *Id.* at Sections 2, 3, and 4. The 2009 Forms required an owner of a stallion to "certify that the . . . stallion [would] stand the entire breeding season of [the applicable year] in the state of Kentucky [and] at no time during the year

-4-

[would] he service a mare in any other state." In addition, the regulation required owners to register a stallion's offspring with the Commission on a "Kentucky Sire Stakes Nomination Form, KHRA 300-1 (08/06)," and pay an annual fee. *Id*. at Section 29-31.

In 2013, the General Assembly amended KRS 230.770 to remove the requirement that Kentucky Sire Stakes eligibility be linked solely to a horse's sire. Instead, the General Assembly expanded the eligibility for the Development Fund to include any "Kentucky-bred standardbred horses." KRS 230.770(2). Following the statutory alterations, the Commission amended the Regulation on December 6, 2013 (the "2013 Regulation"). The amendments changed how the Development Fund worked and expressly named the Incentive Fund as a funding source for the Kentucky Sire Stakes. 811 KAR 1:215 Section 1(5) (2014). Additionally, under the 2013 Regulation, a foal could be eligible for the Kentucky Sire Stakes if its father (stallion) or mother (mare) resided in Kentucky and the foal fulfilled all other regulatory requirements. *Id*. at Section 1(3).

Thus, under the 2013 Regulation, the General Assembly removed the stallion's residence in Kentucky as an absolute condition precedent to any offspring's eligibility in the Kentucky Sire Stakes. *Id*. As a result, the stallion could be from out of state if the mare met the Kentucky residency and registration requirements. *Id*. at Section 2(1).

-5-

Nevertheless, the in-state residency of a stallion was still pertinent under the 2013 Regulation. As before, an owner who wished to make a Kentucky stallion's offspring eligible could register the stallion with the Commission. *Id*. at Section 2(1). However, such registration was also on a new form, the "KSDF/KSBIF Stallion Certificate of Eligibility Form, KHRC 215-2 (7/13)" (the "2013 Form"). *Id*. at Section 2(2)(a). The 2013 Form required an owner or lessee of a stallion to attest to a different set of circumstances than did the 2009 Forms. Specifically, the owner was required to certify "that the . . . stallion [would] reside in Kentucky for one hundred eighty (180) days in the calendar year of conception, and that the stallion [would] not service a mare in any other state, jurisdiction or country during the year in which the stallion [was] registered." *Id*. at Section 1(7).

**FACTUAL AND PROCEDURAL BACKGROUND**

As previously discussed, Appellants were the owners of ten standardbred stallions who sired twenty foals conceived between 2010 and 2013 and born between 2011 and 2014. These foals later finished first, second, or third in Kentucky Sire Stakes races from 2014 to 2017.

While the ten stallions were each registered as a Kentucky sire by their owners' filing of the 2009 Forms, none of the stallions' owners submitted a 2013 Form to the Commission in the year of the conception of the named foal. Thus, although the Commission paid Sire Stakes purses to Appellants as the

-6-

owners of the twenty foals, it did not pay Appellants an incentive as the owners of the respective stallions who had sired such foals as provided for in the 2013 Regulation.

Appellants subsequently approached the Commission and requested stallion-owners' incentive awards under Section 18(3) of the 2013 Regulation. They claimed entitlement to awards for winning foals conceived from 2010 to 2013, based on their stallions' registrations under the 2009 Regulation. The Commission denied Appellants' claims because they had not registered their stallions under the 2013 Form.

On July 20, 2018, Appellants filed suit in Franklin Circuit Court against the Commission, claiming over $220,000.00 in damages. They premised their claims on two causes of action: breach of regulatory duty under the Regulation and theft by failure to make required disposition of property. The Commission moved to dismiss, citing sovereign immunity, lack of jurisdiction, statute of limitations issues, and failure to state a claim. The Franklin Circuit Court ultimately held the case in abeyance, concluding that Appellants had failed to exhaust their administrative remedies.

Appellants then filed an administrative action with the Commission on November 9, 2018, and the hearing officer issued a recommended order denying Appellants' claim. The hearing officer concluded that the 2013

Regulation had a latent ambiguity, as he determined that the 2013 Regulation was silent as to whether the stallion-owners' incentive program began with the 2014 breeding season or the 2014 racing season. The hearing officer reasoned that the overriding factor in interpreting the ambiguous regulations was the drafters' intent.

In reviewing the regulation's history, the hearing officer found that the drafters' intent for the 2013 Regulation was to establish the stallion-owners' incentive program beginning with foals conceived in 2014. Therefore, the Commission would not pay any awards associated with the stallion-owners' incentive program until those foals competed as two-year-olds in 2017. Otherwise, the hearing officer reasoned that the funds would not incentivize the standing and residing of stallions in Kentucky.

The Commission issued its final order on December 11, 2019, adopting the hearing officer's recommended order and most of its reasoning with a few modifications and additions. The Commission, however, held that the 2013 Regulation was unambiguous when construed as a whole and that it barred Appellants' claims. In addition, the Commission held that Appellants' stallions were not "registered" for stallion-owners' incentive awards as required by the regulation because the required registration form – the 2013 Form – did not exist until December 2013. Instead of relying on the hearing officer's factual finding concerning the Commission's regulatory intent as the basis for its decision,

therefore, the Commission concluded that "[t]he regulatory intent further supports this plain reading of the regulation."

Appellants appealed the Commission's final order to the Franklin Circuit Court. The circuit court consolidated the original case that it had held in abeyance and Appellants' appeal from the Commission's final order. The parties submitted to the circuit court joint stipulations of fact. On appeal, the Franklin Circuit Court held that Appellants were not eligible for the stallion-owners' incentive awards for stallions registered from 2010 to 2013 for applicable races from 2014 to 2017. The circuit court reasoned that Section 2 of the 2013 Regulation provided that a stallion was registered "only if its owner completes the correct form – the [2013 Form] – in the year of conception of the foal." Consequently, because the 2013 Form did not exist until December 2013, the circuit court reasoned that the stallion-incentive awards could not begin with the 2014 racing season.

Appellants thereafter filed this appeal, and the Commission filed a "protective or conditional cross-appeal" to preserve arguments concerning sovereign immunity, failure to state a claim, and lack of jurisdiction.

We will develop further facts as they become relevant to this Opinion.

## ANALYSIS

### a. Standard of Review

While an appellate court reviews issues of law *de novo*, it must also "afford deference to an administrative agency's interpretation of the statutes and regulations it is charged with implementing." *Commonwealth, ex rel. Stumbo v. Kentucky Public Service Comm'n*, 243 S.W.3d 374, 380 (Ky. App. 2007). Indeed, as stated by another panel of this Court, "[a] reviewing court is not free to substitute its judgment as to the proper interpretation of the agency's regulations as long as that interpretation is compatible and consistent with the statute under which it was promulgated and is not otherwise defective as arbitrary or capricious." *Commonwealth, Cabinet for Health Services v. Family Home Health Care, Inc.*, 98 S.W.3d 524, 527 (Ky. App. 2004) (citation omitted).

Additionally, when reviewing an agency's factual determinations, the court must determine "whether the agency's decision was based upon substantial evidence." *Runner v. Commonwealth*, 323 S.W.3d 7, 10 (Ky. App. 2010) (citations omitted). "Substantial evidence" is that which "has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972) (citation omitted). If the record contains substantial evidence supporting the agency's finding, then the circuit court must defer to the administrative agency's finding, "even though

there may be conflicting evidence in the record." *Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981) (citation omitted).

### b. **Discussion**

In this case, Appellants contend that their stallions were eligible for both the Development Fund and the Incentive Fund because they were registered correctly under the 2013 Regulation, although Appellants stipulate that they had only registered their stallions on the 2009 Forms and not on the 2013 Form.

On the other hand, the Commission argues that Appellants seek stallion-owners' incentive awards for stallions siring winning foals conceived from 2010 to 2013, before the Commission added the incentive award to the 2013 Regulation. The Commission argues that Appellants are not entitled to the relief sought because the stallions at issue were not registered using the 2013 Form. Accordingly, the Commission contends that Appellants' registration of their stallions on the 2009 Forms is invalid for the new stallion-owners' incentive award added via the amendments evidenced by the 2013 Regulation.

Section 18(3) of the 2013 Regulation stated that stallion-owners' incentive awards "shall be awarded . . . to the owner of the *stallion or stallions residing in Kentucky* that sired the [Kentucky Sire Stakes] first[-], second[-], or third[-]place finisher . . . [.]" (Emphasis added.) Further, a "[s]tallion residing in Kentucky" was defined in Section 1(7) of the 2013 Regulation as "a stallion

physically located and standing in Kentucky for 180 days of the calendar year in which the stallion *is registered* that does not service mares in any other state, jurisdiction, or country outside of Kentucky during the calendar year in which the stallion *is registered*." 811 KAR 1:215 Section 1(7) (emphasis added). Thus, the certification language contained in the 2013 Form exactly mirrors the definition of a "[s]tallion residing in Kentucky" in the 2013 Regulation. The 2009 Forms do not contain such language.

Finally, Section 2(2)(a) states that "[a] standardbred stallion *shall* be registered on the [2013 Form]." (Emphasis added.) Section 2(2)(b) clarifies that a stallion satisfying such requirement "*shall* be considered a registered stallion for purposes of this administrative regulation." (Emphasis added.)

We agree with both the circuit court and the Commission that substantial evidence exists in the record to support the Commission's findings in this case. Specifically, because the 2013 Form did not exist until December 2013, and because Appellants' stallions were registered only under the 2009 Forms, Appellants did not meet all the regulatory registration requirements contained in the 2013 Regulation and are not eligible for the incentive award thereby created. The specific language of the definition of a "[s]tallion residing in Kentucky" is a stallion "physically located and standing in Kentucky for 180 days *of the calendar year in which the stallion is registered* that does not service mares in any other

-12-

state, jurisdiction, or country outside of Kentucky *during the calendar year in which the stallion is registered*." Moreover, the 2013 Regulation spells out how a "[s]tallion residing in Kentucky" is registered, which is to file a 2013 Form for such stallion. In practical terms, the 2009 Forms and the 2013 Form are far from identical, as the 2013 Form required certification to a much larger time commitment than the 2009 Forms.

Although Appellants' stallions may have been present in Kentucky in the years in which the various Sire Stakes-winning offspring were conceived (between 2010 and 2013), the Commission's determination that they were not "registered" as required by the regulation was supported by substantial evidence of record. Moreover, while Appellants may have registered their stallions under the previous version of the Development Fund, those registrations only made those stallions' offspring eligible for Kentucky Sire Stakes races and purses, a program in place from 2009 to 2013 and continued after the 2013 Regulation. Indeed, the parties stipulated that the Commission had already made awards to Appellants as owners of the applicable foals for each first-, second-, or third-place finish. Accordingly, we conclude that the Commission's interpretation of the 2013 Regulation is reasonable and "based on a permissible construction" of the regulation's plain language. *See Stumbo*, 243 S.W.3d at 380.

## CONCLUSION

We affirm the Franklin Circuit Court's opinion and order upholding the Commission's interpretation of the 2013 Regulation. Therefore, we do not address the arguments in the protective cross-appeal.

ALL CONCUR.


BRIEFS FOR APPELLANTS/
CROSS-APPELLEES:

Michael D. Meuser
Elizabeth C. Woodford
Lexington, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT:

Jennifer Wolsing
T. Chad Thompson
Lexington, Kentucky