DRAKES CREEK HOLDING
CO., LLC, Appellants

v.

FRANKLIN-SIMPSON COUNTY BOARD OF ZONING ADJUSTMENT; and Franklin-Simpson County Planning & Zoning Commission, and Jim Henderson Individually and in His Official Capacity as Judge/Executive of Simpson County, Kentucky, Appellees

and

Franklin-Simpson County Board of Adjustment, a/k/a Franklin-Simpson County Board of Zoning Adjustment; Joe Perry, Appellants

v.

Charles W. Deweese; Charles Deweese Construction, Inc.; Penny Deweese; and Drakes Creek Holding Company, LLC, Appellees

and

David Carver and Ronda Carver, Appellants

v.

Charles W. Deweese; Charles Deweese Construction, Inc.; Penny Deweese and Drakes Creek Holding Company, LLC, Appellees

and

David Carver, Ronda Carver, Joe Jones, Josh Jones, Bill Moody, Beverley Sharp, Appellants

v.

Franklin-Simpson County Board of Zoning Adjustment (also referred to as Franklin-Simpson County Board of Adjustment), Charles W. Deweese and Penny Deweese, Appellees

NO. 2015-CA-000789-MR, NO. 2015-CA-001234-MR, NO. 2015-CA-001235-MR, NO. 2015-CA-001236-MR

Court of Appeals of Kentucky.

MARCH 31, 2017; 10:00 A.M.

BRIEF FOR DRAKES CREEK HOLDING CO., LLC: Stephen K. Heard, Nashville, Tennessee, Adam O. Knight, Brentwood, Tennessee.

BRIEF FOR FRANKLIN/SIMPSON COUNTY BOARD OF ADJUSTMENT AND JOE PERRY, IN HIS OFFICIAL CAPACITY AND AT ORAL: Aaron D. Smith, Bowling Green, Kentucky, John T. Soyars, Hopkinsville, Kentucky.

AT ORAL ARGUMENT FOR DRAKES CREEK HOLDING CO., LLC: Adam O. Knight, Brentwood, Tennessee.

BRIEF FOR CHARLES DEWEESE, ET AL: Buckner Hinkle, Jr., Lexington, Kentucky, Margaret Ruth Grant, Louisville, Kentucky, Bethany A. Breetz, Timothy D. Crocker, Franklin, Kentucky.

ALSO APPEARED AT ORAL ARGUMENT FOR CHARLES DEWEESE, ET AL: Steven Henderson, Louisville, Kentucky.

BRIEF FOR DAVID CARVER; ALSO APPEARED AT ORAL ARGUMENT: Tim Mefford, Franklin, Kentucky.

AT ORAL ARGUMENT FOR PLANNING AND ZONING COMMISSION AND SIMPSON COUNTY JUDGE EXECUTIVE HENDERSON: Sarah Payne-Jarboe, Bowling Green, Kentucky.

BEFORE: KRAMER, CHIEF JUDGE; D. LAMBERT AND J. LAMBERT, JUDGES.

## OPINION

LAMBERT, D., JUDGE:

This consolidated opinion resolves several disputes arising from the grant and subsequent revocation of a conditional use permit (CUP) by the Franklin-Simpson County Board of Zoning Adjustment (the Board). After review, we find no reversible error and affirm the Simpson Circuit Court.

## I. BACKGROUND

In February 2012, Charles and Penny Deweese applied for a CUP to begin operating a rock quarry on two adjoining properties in Simpson County, Kentucky. The properties belonged to the Deweeses and comprised 87 agriculturally zoned acres. At the time, the properties were only accessible via Ditmore Ford Road, a narrow county road. The Deweeses included detailed maps in their application. The maps described the quarry's location within the properties' boundaries.

The Board considered the Deweeses' application during a public hearing on February 28, 2012. The hearing itself lasted more than six-hours, and nearly 400 people attended. Among those in the crowd were a group of neighboring landowners (the Carvers) who opposed the CUP. In particular, the Carvers were concerned about prospective traffic on Ditmore Ford Road. When given the opportunity to speak at the hearing, the Carvers presented evi-

dence that Ditmore Ford Road would require certain improvements to accommodate large commercial trucks traveling to and from the quarry. The Carvers, through counsel, also cross-examined a Deweese representative. In their case in chief, the Carvers offered evidence that an unimproved Ditmore Ford Road was too narrow for large commercial trucks to negotiate and unsafe for motorists at one particularly steep location because of an inadequate stopping-sight distance. The Carvers also explained that a bridge located to the east of the quarry could not support large commercial trucks during high water times.

Despite the Carvers' efforts, the Board voted to grant the CUP. From its written findings, the Board specifically determined that the quarry would benefit the community by creating jobs and increasing competition for limestone rock and agriculture lime. Notably, however, the Board imposed the following three conditions on the quarry's operations:

1. Trucks exiting the quarry on Ditmore Ford Road will be required to turn west on Ditmore Ford Road towards Highway 1008;

2. The quarry will be permitted to operate between the hours of 7:00 a.m. and 5:00 p.m. on weekdays, and from 7:00 a.m. until noon on Saturdays;

3. Prior to the commencement of the harvesting of limestone at the quarry, the applicant is required to construct a berm at least fifteen (15) feet high along the southern and western borders of the harvest area.

Despite a motion from Commissioner Ray Malchow regarding possible improvements to Ditmore Ford Road, there were no other conditions included in the Board's written findings. The Carvers later appealed the Board's decision to the Simpson Circuit Court, where they argued that the CUP was arbitrarily granted.

While a decision on the Carvers' appeal was pending, a series of events led to additional disputes. First, both the City of Franklin and the Simpson County Fiscal Court adopted ordinances prohibiting commercial trucks from hauling material on Ditmore Ford Road. The Simpson County Judge/Executive, Jim Henderson, allegedly supported the county ordinance. Second, in the wake of the ordinances' adoption, Drakes Creek Holding LLC (Drakes Creek), the legal entity operating the quarry, stopped transporting limestone on Ditmore Ford Road. Trucks entering and exiting the quarry instead began utilizing a private haul road (Haul Road B) that crossed two other Deweese properties and linked the quarry to State Highway 585. Importantly, there was no access to Haul Road B from State Highway 585 when the Deweeses applied for the CUP. It was only after the Carvers appealed the Board's decision to grant the CUP that the Kentucky Department of Transportation allowed the Deweeses to build a connection joining the two roads.

Upon learning that trucks were no longer using Ditmore Ford Road, the Board scheduled a hearing regarding the CUP. At the hearing, the Board relied on a report filed by Joe Perry, the local planning and zoning administrator. In that report, Perry concluded that the Deweeses were not operating the quarry in compliance with the CUP. Perry evidently reached this conclusion after finding that the ordinances had made it impossible for the Deweeses to comply with the CUP, and that trucks had begun using Haul Road B. Perry's report further explained that the Deweeses' original CUP application did not mention the two additional properties over which Haul Road B runs. After reviewing this evidence, the Board,

which consisted of a new member recently appointed by Jim Henderson, revoked the CUP.

In 2014, the Deweeses appealed the CUP revocation. In essence, they disagreed that the use of Haul Road B violated the CUP's terms. That same year, the legal entity Drakes Creek brought a separate action against the Board, Judge/Executive Jim Henderson, and the Franklin-Simpson County Planning and Zoning Commission (the Planning Commission) for their respective roles in adopting the county ordinance and revoking the CUP. According to that complaint, the ordinances amounted to an inverse condemnation of the Deweeses' property and the CUP revocation tortiously interfered with certain contracts to which Drakes Creek was a party.

At that point, three primary issues were before the circuit court. The court considered the issues in turn and first decided that the original CUP was properly issued in 2012. The circuit court then decided that the CUP was improperly revoked in 2014. Finally, the circuit court dismissed the lawsuits against Jim Henderson and the Planning Commission pursuant to CR[1] 12.02(f). This appeal followed.

## II. STANDARD OF REVIEW

Kentucky courts review planning and zoning decisions for arbitrariness. *Keogh v. Woodford County Bd. of Adjustments*, 243 S.W.3d 369, 372 (Ky. App. 2007). Under that standard, the administrative agency must have acted within its statutory authority, afforded the parties procedural due process, and supported its decision with substantial evidence. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky.

1964). Dismissals under CR 12.02(f) are reviewed *de novo* to evaluate whether the facts alleged in complaint, if proved, would entitle the plaintiff to relief. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002).

## III. DISCUSSION

On appeal, the parties challenge the circuit court's decisions on several grounds. We begin our analysis by explaining that the Board's initial decision to grant the CUP was proper. Our focus then shifts to the Board's later decision to revoke the CUP, which we agree was improper. From there, an application of Kentucky law to the allegations contained in Drakes Creek's complaint confirms that the circuit court correctly dismissed the action against Jim Henderson and the Planning Commission.

### 1. The CUP was properly granted

Although the Carvers present their appeal as a six-point challenge against the Board's decision to grant the CUP, their position distills into two main arguments. One is an attack on the sufficiency of the Board's factual findings. The other is a due process claim based on the manner in which the Board approved the CUP. For the following reasons, neither challenge is persuasive.

KRS[2] 100.237 authorizes local zoning boards of adjustment to hear and decide applications for conditional use permits. A "conditional use permit" is an exception within Kentucky's zoning law which allows an applicant to undertake a beneficial land use not otherwise permitted in a particular zoning district. KRS 100.111(7). The local zoning ordinance supplies the standards the board of adjustment must follow in determining whether

1. Kentucky Rules of Civil Procedure.

2. Kentucky Revised Statutes.

to grant or deny a conditional use permit. *Hardin County v. Jost*, 897 S.W.2d 592, 595 (Ky. App. 1995). Typically, these standards appear in the zoning ordinance as list of acceptable conditional uses that the board of adjustment may authorize in particular zones. *See Harrison Silvergrove Property, LLC v. Campbell County and Municipal Board of Adjustment*, 492 S.W.3d 908, 913 (Ky. App. 2016). The applicant is then able to choose from the list and apply for a conditional use permit, which the board of adjustment may approve, modify, or deny. KRS 100.237. The board of adjustment must, however, adhere to fundamental due process requirements. *See Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 469 (Ky. 2005)(right to a hearing, the taking and weighing of evidence, factual findings based on the record, an appropriate order, and a judicial review of the administrative action); *see also Kaelin v. City of Louisville*, 643 S.W.2d 590, 592 (Ky. 1982)(right to cross-examination).

In its final form, a conditional use permit consists of two parts: (1) a factual determination justifying the issuance of a permit; and (2) a statement of conditions which the applicant must meet for the use to be permitted. KRS 100.111(7). This latter part must be recorded in the board of adjustment's meeting minutes "and on the conditional use permit...." KRS 100.237(1). Once approved, the local administrative official issues the conditional use permit. *See* KRS 100.111(7).

 Here, the Board had a sufficient basis for issuing the CUP. The Carvers concede that the local zoning ordinance lists a limestone quarry as an available conditional use for agricultural zones, and the Board found that the Deweese quarry would serve the public interest by providing jobs in the community while also lowering prices for construction materials.

The Board also issued the CUP without violating the Carvers' due process rights. The Board held a six-hour public hearing, during which time the Carvers were given ample opportunity to voice their concerns. Nine individuals even took advantage of this opportunity and spoke in opposition of the Deweeses' application. Moreover, the Carvers' counsel was given the opportunity to cross-examine a representative of the Deweeses in front of the Board. The Board imposed three conditions which appeared on the CUP, and the Board recorded the conditions in its meeting minutes. Accordingly, the CUP was properly issued.

## 2. The Board improperly revoked the CUP based on the evidence in the record

The Board grounded its decision to revoke the CUP on Joe Perry's report. On appeal, the Board once again argues that it was impossible for the Deweeses to comply with the CUP's conditions due to the ordinances. The Board further maintains that by accessing the quarry by way of Haul Road B, the Deweeses deviated from the approved site plan and thereby impermissibly expanded the scope of the CUP. We disagree.

 A conditional use permit does not exempt a landowner from complying with "all of the requirements of building, housing, and other regulations." KRS 100.237(2)(a). In fact, KRS 100.237(4) imposes a continuing duty on landowners to comply with the conditions listed on the conditional use permit. If a landowner fails to do so, then KRS 100.237(4) provides the following course of action (emphasis added):

> [T]he administrative official shall report the fact in writing to the chairman of the board of adjustment. **The report shall state specifically the manner in which the landowner is not complying with the conditions on the conditional use**

permit, and a copy of the report shall be furnished to the landowner at the same time that it is furnished to the chairman of the board of adjustment. The board shall hold a hearing on the report within a reasonable time, and notice of the time and place of the hearing shall be furnished to the landowner at least one (1) week prior to the hearing. If the board of adjustment finds that the facts alleged in the report of the administrative official are true and that the landowner has taken no steps to comply with them between the date of the report and the date of the hearing, the board of adjustment may authorize the administrative official to revoke the conditional use permit and take the necessary legal action to cause the termination of the activity on the land which the conditional use permit authorizes.

 Here, by relying on Joe Perry's report, the Board erroneously concluded that the ordinances rendered compliance with the CUP "impossible." The CUP only required trucks to exit the quarry by turning west on Ditmore Ford Road, while the ordinances only banned commercial trucks from traveling on Ditmore Ford Road. The ordinances did not prevent the Deweeses from operating the quarry, nor did they restrict all vehicles from using Ditmore Ford Road. Indeed, neither the use of Ditmore Ford Road nor a vehicle is hypothetically necessary for transporting material from the quarry. One could buy gravel from the quarry and transport it in another manner that comports with the

CUP conditions and KRS 100.237(2)(a).[3] Because uncertain commercial feasibility does not equal impossibility, the circuit court correctly rejected this position.

 The circuit court also made the correct decision as to the Board's alternate position regarding Haul Road B. Despite the Board's reliance on *Selligman v. Western & Southern Life Ins. Co.*, 277 Ky. 551, 126 S.W.2d 419 (1938), the Deweeses' original CUP application did not need to include the two properties Haul Road B crosses. Unlike the Deweeses, the *Selligman* landowner clearly renounced a particular access route in order to secure a variance.[4] *See id.* at 422. The landowner did not build a new access route as a matter of right in response to a local ordinance likely aimed at frustrating the very conditional use previously approved by the Board. Haul Road B is a "private drive" under Section 7.21.5 of the Franklin-Simpson County Zoning Ordinance: it passes through and incidentally serves two agriculturally-zoned properties owned by the Deweeses. No other quarry activity occurs on the two properties, and as previously discussed, the CUP does not require the quarry to use Ditmore Ford Road. Accordingly, the Deweeses utilized Haul Road B in line with KRS 100.237(2)(a)[5] and the CUP conditions. The Board's decision to revoke the CUP was arbitrary, and the decision to reinstate the CUP was appropriate.

3. **The claims against County Judge/Executive Jim Henderson and the**

---

**3.** What constitutes "other regulations" under the statute is ambiguous. Local regulations abound, and regulations only proliferate at the state and federal levels. Nevertheless, the ordinances prohibiting commercial trucks on Ditmore Ford Road certainly qualify as "other regulations" in this context under a strict application of the ejusdem generis rule. The ordinances, like building and housing codes, affect land use in connection with a CUP.

**4.** Applications for variances, similar to applications for conditional use permits, are heard and decided by zoning board of adjustments. *See* KRS 100.241.

**5.** *See supra* note 3 as to why the local zoning ordinance also falls into the statutory category of "other regulations."

**Planning Commission were properly dismissed under CR 12.02(f)**

As for the claims against Jim Henderson and the Planning Commission, we once again find ourselves in agreement with the circuit court. The record is clear in that the Planning Commission played no role in the subject matter of this lawsuit. In accordance with KRS 100.237, it was the Board—not the Planning Commission—that heard and decided the CUP. Furthermore, the allegedly wrongful ordinances were adopted independently by the local legislative bodies: the Simpson County Fiscal Court and the City of Franklin Kentucky. Jim Henderson, as the County Judge/Executive, only oversees the executive functions of the county government. *See* KRS 67.710. He does not enact legislation. Moreover, even if Henderson acted "behind the scenes" in a bad faith effort to appoint a board member who would vote to revoke the CUP, there is no relief available. Kentucky law does not allow a Judge/Executive to directly appoint a board of adjustment member. Rather, the respective legislative body, in this case the Simpson County Fiscal Court, has the power to approve the appointee. KRS 100.217(3). Accordingly, dismissal of Drakes Creek's lawsuit was appropriate under CR 12.02(f).

Based on the foregoing, the decisions of the Simpson Circuit Court are hereby affirmed.

ALL CONCUR.