RENDERED:  MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

No. 2023-CA-0605-MR

JAMES JONES                                                                  APPELLANT


                                  APPEAL FROM FRANKLIN CIRCUIT COURT
v.                                 HONORABLE PHILLIP J. SHEPHERD, JUDGE
                                  ACTION NO. 22-CI-00208


ENERGY AND ENVIRONMENT
CABINET; NICK DARNELL;
MICHAEL DARNELL; AND
DARNELL PUMPKINS                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND GOODWINE, JUDGES.

EASTON, JUDGE:  This is an administrative appeal of the revocation of Appellant

James Jones' ("Jones") construction permit for a Concentrated Animal Feeding

Operation (in this case, "Hog Barns") by the Energy and Environment Cabinet, Division of Water ("Cabinet"). After review of the record, and for the reasons which follow, we affirm the Franklin Circuit Court.

**FACTUAL AND PROCEDURAL HISTORY**

In June 2019, Jones filed an application for a permit to construct a wean-to-finish deep pit hog facility[1] consisting of two barns, designed for 7,800 hogs, in Graves County, Kentucky. The Hog Barns would be serviced by animal waste containment pits, which must be approved by the Cabinet as part of a waste handling system. In October 2019, the Cabinet issued a construction permit to Jones for his Hog Barns with waste containment pits.

The permit application required identification of "significant features" within one mile of the boundaries of the property where the Hog Barns would be built. The application process also required siting criteria for certain "setback features" which must be located at least 1,500 feet away from the Hog Barns operation. The wording of "setback features" includes a "dwelling not owned by applicant, church, school, schoolyard, business, park or other structure to which the general public has access."

---

[1] In this model, pigs are brought in at weaning and are housed at the same facility until they have reached the desired weight.

In February 2020, Jones received a letter from the Cabinet that his construction permit was being revoked. The letter stated two reasons for the revocation. First, a neighboring farm with a seasonal business, Darnell Pumpkins, has public access and, if the entire acreage of the Darnell farm is considered, then Darnell Pumpkins is a business located within the setback of the siting criteria for the permit. Second, Jones had failed to include a Nutrient Management Plan ("NMP") with his application. The letter stated the revocation of the permit is a final decision, but it would not preclude the submission of an application for the same site or facility. The letter also gave instructions on how to request a hearing to challenge the revocation.

Jones requested such a hearing. In March 2020, he filed a complaint with the Cabinet's Office of Administrative Hearings, challenging the revocation of the construction permit. Virginia Baker Gorley was assigned as the Hearing Officer. In July 2020, the Hearing Officer allowed Nick Darnell, Michael Darnell, and Darnell Pumpkins (collectively, "Darnells") to intervene. Michael Darnell is the owner of Darnell Pumpkins, and Nick Darnell operates the pumpkin patch part of the family business. A hearing was held in April 2021.

The Hearing Officer issued her report in August 2021, recommending the revocation be upheld on the basis that Jones failed to identify a "significant feature," the Darnell Pumpkins patch, which existed within one mile of the

property boundary of the facility proposed in his application. The Hearing Officer recommended that the basis of the revocation should not be because Jones did not submit an NMP with his application, as the Hearing Officer believed the law did not require an NMP to be submitted for a "construction" application. The Hearing Officer further stated the Cabinet acted in accordance with the requisite statutes in revoking Jones' permit without a prior hearing. Finally, the Hearing Officer determined that the issues regarding the setback criteria were moot because the revocation should be upheld for other reasons.

The Cabinet's Secretary, Rebecca Goodman ("Secretary"), issued her Final Order in February 2022. The Secretary partially adopted and partially rejected the Hearing Officer's conclusions. The Secretary determined the permit revocation should be upheld both because Jones failed to identify a significant feature in his application and because he did not include an NMP with the application. The Secretary agreed with the Hearing Officer that the setback criteria finding was moot and that the Cabinet complied with the law in revoking the permit without a hearing.

Jones then filed an Appeal and Petition for Review in the Franklin Circuit Court in March 2022. All parties briefed their positions, and oral arguments were held in November 2022. The circuit court issued its Opinion and Order on February 24, 2023. From this Order Jones appeals.

The circuit court's Order affirmed the Secretary's Final Order to revoke Jones' construction permit. The circuit court concluded Jones' permit was issued prematurely, and the Cabinet acted properly in revoking the permit. The circuit court also concluded that the post-revocation hearing afforded due process to Jones. According to the circuit court, Jones' application was incomplete, as it did not have the required NMP attached. The circuit court also found Jones' application deficient as it did not disclose Darnell Pumpkins as a "significant land feature," which then should have been identified as being within one mile of the property boundaries of the Hog Barns operation. The circuit court's Order did not address whether the setback criteria issue was moot.

In the hearings below, Jones challenged the propriety of the Cabinet revoking the permit prior to an administrative hearing, but he appears to have abandoned that argument, as it was not addressed in his brief. Failure to address an issue in an appellant brief is deemed to waive that argument. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004).

There are essentially three questions. The first two questions were addressed by the circuit court as a basis for its Order. First, was an NMP required for a construction permit? Second, was Darnell Pumpkins a "significant feature" that must be disclosed with the permit application? Finally, was the 1,500 feet set-

back determination regarding the pumpkin patch rendered moot by the Secretary's holdings, or must we decide that question?

## STANDARD OF REVIEW

"Generally, our review of the decision of an administrative agency is highly deferential, and we reverse only if the decision was arbitrary, unsupported by substantial evidence, or otherwise erroneous as a matter of law. Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men. However, we review questions of law de novo, including the application and interpretation of statutes." *River City Fraternal Ord. of Police Lodge No. 614, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 664 S.W.3d 486, 493 (Ky. 2022), *reh'g denied* (Feb. 16, 2023) (internal quotation marks and citations omitted). In determining arbitrariness, "the administrative agency must have acted within its statutory authority, afforded the parties procedural due process, and supported its decision with substantial evidence." *Drakes Creek Holding Co., LLC v. Franklin-Simpson Cnty. Bd. of Zoning Adjustment*, 518 S.W.3d 174, 179 (Ky. App. 2017).

"Kentucky courts give substantial deference to an administrative agency's construction of applicable statutes and regulations as long as that interpretation is consistent with the statutory or regulatory language at issue. Indeed, in the event of any ambiguity, 'the courts grant deference to any

-6-

permissible construction of that statute [or regulation] by the administrative agency charged with implementing it,' regardless of whether the Court would reach the same conclusion *de novo*." *Louisville Gas & Elec. Co. v. Kentucky Waterways Alliance*, 517 S.W.3d 479, 489-90 (Ky. 2017) (citations omitted).

## ANALYSIS

**Was the NMP required to be submitted with the construction permit application?**

Jones argues it was arbitrary for the Secretary and the circuit court to rule that the permit revocation should be upheld on the basis that he did not attach an NMP to his application. The Kentucky Pork Producers Association, Inc. ("Association"), filed an amicus brief in support of Jones on this point.

Kentucky law requires an owner or operator of an "Agricultural Wastes Handling System" to obtain a permit to construct, modify, or operate the facility pursuant to the requirements found in 401 KAR[2] 5:005 Sections 2, 24, 25, and 30(1). "Agricultural Wastes Handling System" is defined as a structure or equipment that conveys, stores, or treats manure from an animal feeding operation prior to land application. 401 KAR 5:002(5). Jones' proposed Hog Barns included such a system and thus met this definition subject to the regulations.

---

[2] Kentucky Administrative Regulations.

Jones and the Association insist that the Cabinet's published guidelines do not require the submission of an NMP with its application for a construction permit. They point to the Kentucky Pollutant Discharge Elimination System Fact Sheet.[3] But this Fact Sheet is clearly titled: "General Kentucky No Discharge Operational Permit (KNDOP) for *Small and Medium* Animal Feeding Operations (AFO)." (Emphasis added.) Jones' application stated the total number of hogs he was planning to house in the Hog Barns was 7,800, with the approximate weight of each animal being 140 pounds.

By the Fact Sheet definition, a "Large Animal Feeding Operation means an AFO that stables or confines as many as or more than the numbers of animals specified in any of the following categories: (4) 2,500 swine, each weighing fifty-five (55) pounds or more." Jones' Hog Barns cannot be classified as a small or medium AFO. The plain language of the Short Form B application, which is specifically incorporated into the governing regulation, requires that a large AFO have an NMP attached to the application.

On the other hand, Jones is correct in that the Cabinet's witnesses testified that it was a common practice to allow an NMP to be submitted after the issuance of the construction permit, but prior to the issuance of the operational

---

[3] https://eec.ky.gov/Environmental-Protection/Water/PermitCert/KPDES/Documents/ KNDOP(AFO)%20Fact%20Sheet.pdf.

permit. Jones argues that requiring an NMP prior to the issuance of a construction permit is a new policy requirement of the Cabinet, contrary to established practice, and therefore arbitrary. We must disagree.

Even if some in the Cabinet previously had a practice of not requiring an NMP to be submitted with a construction permit, this practice was clearly contrary to the governing regulation. "[A] public officer's failure 'to correctly administer the law does not prevent a more diligent and efficient' officer's proper administration of the law, as '[a]n erroneous interpretation of the law will not be perpetuated.'" *Nat. Res. & Env't Prot. Cabinet v. Kentucky Harlan Coal Co.*, 870 S.W.2d 421, 427 (Ky. App. 1993) (citing *Delta Air Lines, Inc. v. Revenue Cabinet,* 689 S.W.2d 14, 20 (Ky. 1985)). Adhering to the law as it is written cannot be arbitrary.

It is at this juncture we should explain the importance of an NMP for a large AFO. An NMP is defined as "the plan for an individual operation developed for the purpose of recycling nutrients from animal waste onto cropland or pasture." 401 KAR 5:002(119). The previously referenced Fact Sheet further explains: "The primary purpose of the NMP is to achieve the correct nutrient level (nitrogen and phosphorus) needed to grow the planned crop by balancing nutrients already in the soil with nutrients in animal waste that is land applied. The NMP should

prevent the application of nutrients at rates that will exceed the capacity of the soil and crops to assimilate them."

As argued by the Cabinet, the NMP is more than just "bureaucratic paperwork." It is an essential regulatory tool that ensures those wishing to operate an AFO will have an effective plan in place to prevent eventual pollution because of the inability of the land to contain the waste. This would include nearby water pollution.

An NMP must include "protocols for testing of manure, litter, process wastewater, and soil; protocols to land apply manure, litter, or process wastewater in accordance with site-specific nutrient management practices that ensure agricultural utilization of the nutrients in the manure, litter, or process wastewater."[4] This practice requires the applicant to test their soil to ensure the soil will properly absorb the nutrients from the animal waste. If the soil is not compatible with the waste, it makes sense to have that information prior to the building of a large AFO.

The lack of a NMP alone was sufficient reason for the Cabinet to revoke Jones' construction permit.

---

[4] Fact Sheet KNDOP GP for Small & Medium AFOs, pages 8 and 9.

**Is Darnell Pumpkins a "significant feature" required to be disclosed on the construction permit application?**

The next question is whether a seasonal pumpkin patch should be considered a "significant feature" that must be disclosed with a permit application. The Cabinet and the Darnells argue that it is, while Jones insists it is not.

The undisputed evidence is that the Darnells' farm consists of approximately 144 acres, but only a portion of that acreage consists of crops with seasonal public access. Testimony indicated that the farm includes a pumpkin patch of approximately seven acres where the public may enter to pick their own pumpkins. There are also hayrides that take place through the pumpkin patch, and there is a corn maze which is also open to the public. This is a seasonal operation, in which this portion of the farm is open from September to the end of October each year.

The regulations require an owner or operator of an Agricultural Wastes Handling System to submit a completed Short Form B. This form requires several attachments, depending on what the applicant is requesting. As we have explained, an NMP was required in this case. The first listed requirement under the attachments portion of the application states:

> Attach a site location map with the facility clearly
> marked. Provide either a U.S. Geological Survey 7 ½ -
> minute quadrangle map, aerial map, topographic map, or
> other map that identifies the site location and significant

features within an aerial of at least 1 mile beyond the property boundaries.

An instruction sheet is included with the application. Under "Section VI. Attachments," a more specific direction is given:

> Attach either a US Geological Survey 7 ½ minute quadrangle map, aerial map, topographic map, or other map with an area of at least 1 mile beyond the property boundaries. Depict or mark the facility and its intake structure, treatment system and disposal area. Also, mark the locations of the wells, springs, surface water bodies, and drinking water wells listed in public records or otherwise known to the applicant within one-quarter mile of the facility property boundary.

The dispute between the parties lies in the definition of "significant features." There is no definition given in either the regulation or in Short Form B. Kentucky's Commissioner of Agriculture ("Commissioner") filed an Amicus brief in support of Jones on this issue. The Commissioner argues that a neighboring landowner's land usage cannot be determined to be a "significant land feature" as a matter of law. The Commissioner's basic argument applies equally to the actual wording of "significant feature" without the insertion of the word "land." The Commissioner, the Secretary (in her revocation letter), and the circuit court inserted the word "land" in the phrase, although this word is not part of the phrasing in the regulation or on the form.

The Cabinet's letter to Jones which informed him of the revocation of his construction permit listed two reasons for the revocation, one being Jones'

-12-

failure to name Darnell Pumpkins as a "significant land feature" within one mile of his property boundary for the proposed facility in his application. The revocation letter reads:

> The Kentucky Division of Water (DOW) issued a Construction Permit (Permit) for the above-referenced facility on October 23, 2019. The DOW has recently found significant land features that were not identified with the application submitted for the Permit received by the DOW on June 28, 2019. In particular, a local business, Darnell Pumpkins, which has general public access, is located within the setback required in the Sitting [sic] Criteria of the Permit. Also, for large feeding operations, the application form states that a Nutrient Management Plan must be attached, but no such plan was attached. Therefore, the DOW is revoking the issuance of the Permit as of the date of this letter. Revocation of this Permit is considered a permit final decision and it shall not preclude the submission of an application for the same site or facility.

Jones argues that the Cabinet's determination that Darnell Pumpkins was a "significant feature" which must be disclosed is arbitrary because it is without precedent or logical explanation. Jones and the Commissioner insist that the phrase "significant features" is limited to permanent significant land features, such as streams, lakes, or hills – not a seasonal crop grown on the land.

As previously stated, the phrase "significant features" is not defined in the application, the form, the regulation, or in any relevant statute. KRS[5] 13A.222,

---

[5] Kentucky Revised Statutes.

entitled "Drafting rules," explains the process for drafting administrative regulations. Subsection 4(e)5. states: "Definitions shall be used only: (a) When a word is used in a sense other than its dictionary meaning, or is used in the sense of one (1) of several dictionary meanings[.]" Because "significant features" is not defined anywhere, it was logical to use an ordinary dictionary meaning, which is what the Hearing Officer attempted to do.

"[A]n administrative agency's interpretation of its own regulations is entitled to substantial deference. A reviewing court is not free to substitute its judgment as to the proper interpretation of the agency's regulations as long as that interpretation is compatible and consistent with the statute under which it was promulgated and is not otherwise defective as arbitrary or capricious." *Commonwealth, Cabinet for Health Servs. v. Fam. Home Health Care, Inc.*, 98 S.W.3d 524, 527 (Ky. App. 2003) (citations omitted).

As we have said, we defer to administrative agencies to some degree when they define a term they must apply. It would not necessarily be out of line to interpret the phrase "significant features" to refer to "land" features. But even with this clarification by the Cabinet, the parties present fair arguments about the status of the pumpkin patch as a land feature.

We must keep in mind that the government oversight here is by the Division of Water as part of the Cabinet tasked with legitimate environment

concerns.  It is noteworthy that the application specifies water features (*e.g.*, wells and streams) as particularly relevant in the process.  In keeping with this understanding, it would be logical to apply the phrase "significant features" to only features of the land itself.  Because of topsoil displacement, significant features could include buildings and parking lots for businesses.  A significant feature may also be hills or slopes raising concerns about the ability of the land in the vicinity to contain waste or other water drainage issues.  But the mere presence of crops alone may not be intended to be a "significant feature" relevant to protection of water or other environmental resources.

With or without the required deference to the Cabinet, we are presently unpersuaded that the mere presence of crops on farmland was intended to be within the definition of significant features.  If so, why is the pumpkin patch different from other crops grown on the Darnell property?  Perhaps because of the business component.  The relationship between significant features and setback features needs to be considered.

When we examine the interaction of significant features and setback features, we see that setback features could be considered a subset of significant features in the application process.  If something requires a setback, then it is significant.  On the other hand, a significant feature, like a nearby stream for example, may not fit within the definition of a setback feature.  So, a crop grown

on land may not be a significant feature impacting the lay of the land itself, but it could be a setback feature and thus significant if it is part of a business open to the public.

Growing of crops alone would not seem to be a significant feature for the purpose of the use of the phrase in the context of environmental protection. Agricultural operations have a statutory definition. KRS 224.71-100(1). But this definition has not been incorporated into the amorphous phrase "significant features" in any statute or regulation. Because we base this Opinion primarily on another reason offered by the circuit court, we need not ultimately decide this question of "significant features" to be disclosed. This should be addressed again if another application is filed.

After the filing of a new and complete application, the Cabinet may be able to show a significant impact of crops being on land as opposed to open fields or forested areas with respect to land waste containment or water drainage. A determination that a pumpkin patch or other crops is a significant feature theoretically might be sustainable. The Cabinet did not ultimately make this particular finding, again conflating significant feature with setback feature. We express some concern about the potential impact of such a broad definition of significant feature as any crops growing in neighboring fields. This could

significantly and perhaps unnecessarily limit many land uses by Jones, the Darnells, or anyone else for that matter.

The conflation by the parties of significant features with a business requiring a setback is present throughout this case. Both Jones and the Agriculture Commissioner argue that a business open to the public has never before been considered a "significant feature" that must be identified in an application. They argue the Cabinet violated KRS 13A.130 by this interpretation, which states: "(1) An administrative body shall not by internal policy, memorandum, or other form of action: (a) Modify a statute or administrative regulation; (b) Expand upon or limit a statute or administrative regulation[.]" Jones argues the Cabinet's interpretation expanded the requirements of the permit application and departed from precedent.

While it may be the case that a seasonal crop-related business open to the public has not been required to be disclosed as a significant feature on the application previously, there was testimony that this particular situation had never arisen before. The deposition testimony of Jory Becker ("Becker"), the manager of the Water Infrastructure Branch of the Cabinet, indicated that he could not recall an instance where a farm that included a business open to the public was within a mile radius of a proposed large AFO that required a waste handling system permit. Becker testified that most farms and other agricultural operations are not open to the public and are therefore not considered a significant feature or subject to the

-17-

setback requirement. He does not believe this is a new condition or way of doing things; this is just a situation that had not previously been encountered.

The testimony of Jason Hurt ("Hurt") supported Becker's statements. Hurt is the environmental engineering branch manager at the Cabinet, and he works in the surface water permits branch. While he agrees the term "significant feature" is undefined in the regulations, he believes it is a common sense meaning of the word. He testified that a "significant feature" includes a business open to the public. Hurt testified that what makes Darnell Pumpkins significant in this case is that it is open to the public. The previous director of the Division of Water, Peter Goodmann, also agreed in his testimony that the Cabinet has the right to interpret its own rules. There cannot be a departure from precedent to complain about when there is no precedent. A well-reasoned precedent is needed, and that should follow a proper application, which recognizes the debate by designation in its attachments, with a record of evaluation of these questions when that application is evaluated.

**Was the 1,500-feet setback requirement rendered moot by the Secretary's other conclusions?**

Finally, Jones argues the circuit court erred in upholding the Secretary's finding that his failure to comply with the setback requirement was moot. He states the 1,500-feet setback requirement was the basis for the permit revocation, and it therefore cannot be moot. In the alternative, Jones argues that if

this determination is moot, it should still be reviewed because it meets the mootness exception of capable of repetition, yet evading review.

The Hearing Officer explained the reasoning for the mootness finding. She explained that the initially granted construction permit was written with certain factual assertions in mind, and these assertions did not include knowledge of the pumpkin patch. When the Cabinet issued the permit and its conditions, it did so without knowledge of the pumpkin patch. The application lacked necessary information – that a business open to the public existed within a mile – in order to issue the necessary requirements. Had the Cabinet known about the existence of the pumpkin patch, it could have investigated further and created requirements to make sure all parties were properly protected. Because the application did not contain that information, the requirements listed in that permit were null and void. Therefore, the disagreement as to whether the Hog Barns could meet the setback requirements was moot.

Given the conflation we have discussed, it is not obvious to what extent the setback issue is truly moot, but it is premature for this Court to determine this on this record. Despite the revocation of Jones' construction permit at issue, there is nothing preventing Jones from filing a new application containing the necessary and required information. Should Jones wish to do so, the Cabinet must then determine if the Pumpkin Patch is a significant feature and a setback

feature and whether Jones' proposed Hog Barns operation is able to meet any setback requirement. From the record, we now know that the actual area used for the seasonable activities (as opposed to the entire Darnell farm) is in fact beyond the 1,500-foot minimum for a setback. But all this should be reconsidered upon a new application.

In this context, we note how the wording of setback features suggests the presence of a "structure" or other alteration of the land itself which impacts the land in conjunction with a business, not necessarily a crop, which might be seasonally sold to the public. Is the Cabinet going to apply this rule to every road-side corn stand where farmers sell some of their corn in season? These questions were rendered moot due to the lack of an NMP with Jones' application. But the question will arise again. We should await evaluation first by the Cabinet when a proper application is filed. Rather than deciding on an *ad hoc* basis that a significant feature, perhaps including setback features, is whatever someone wants it to be in a particular case, it may well be time for more specific regulatory definitions to be drafted with input from all those affected.

**CONCLUSION**

Because of the absence of the required NMP with Jones' application, we affirm the Franklin Circuit Court's order upholding the Cabinet Secretary's revocation of a construction permit.

ALL CONCUR.

| | |
|---|---|
| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE ENERGY AND ENVIRONMENT CABINET: |
| John W. Walters<br>Gary W. Thompson<br>Lexington, Kentucky | Leilani K. M. Martin<br>Frankfort, Kentucky |
| AMICUS BRIEF FOR KENTUCKY PORK PRODUCERS ASSOCIATION, INC.: | BRIEF FOR APPELLEES NICK DARNELL, MICHAEL DARNELL, AND DARNELL PUMPKINS: |
| Michael W. McCain, Jr.<br>Springfield, Kentucky | Tom FitzGerald<br>Frankfort, Kentucky |
| | AMICUS BRIEF FOR JONATHAN SHELL, COMMISSIONER OF AGRICULTURE: |
| | Joseph A. Bilby<br>Frankfort, Kentucky |